Littleton, Judge,
delivered the opinion of the court:
December 27, 1927, plaintiffs became sureties on a conract of December 7, 1927, between Charles A. Blume and the United States for the construction of certain buildings at Pearl Harbor, T. H.
Blume ceased work under his contract February 1, 1929, before the buildings were completed, and their construction was completed by the United States. In October 1929 Blume brought suit in this court alleging breach of contract by the United States and seeking to recover damages in the amount of $297,930.49. During prosecution of that case a plea of fraud was filed by the United States under section 172 of the Judicial Code. After the introduction of proof by both parties and a hearing, the court sustained the plea that Blume had committed fraud against the *589 United States in the prosecution of the case and entered judgment forfeiting all claims under Blume’s contract with the United States in accordance with section 172 of the Judicial Code, U. S. Code, title 28, section 279. The motion of these plaintiffs to intervene in that proceeding for the purpose of seeking to recover a certain amount to which they claimed to be entitled, because of certain matters hereinafter more fully stated arising and growing out of Blume’s contract with the United States, was denied and this suit was later instituted. In this suit plaintiffs, as sureties on Blume’s contract, seek to recover $77,638.65. They paid this amount in settlement of suits against Blume for certain labor and materials furnished to Charles A. Blume. The defendant has filed a special answer and plea in bar praying that the petition be dismissed for the reason that it is predicated upon the same subject matter of the Blume claim which had previously been declared and adjudged to be forfeited to the Government of the United States and forever barred from the jurisdiction of this court. Plaintiffs demur to the plea in bar on the ground that the matters pleaded therein do not constitute a good defense to their cause of action. For the purpose of the demurrer and the plea in bar, the pertinent facts are as follows:
December 7, 1927, Charles A. Blume entered into a contract with the United States through the Chief of the Bureau of Yards and Docks for construction of a barracks, a subsistence building, a laundry, and a boilerhouse at the Naval Operating Base at Pearl Harbor, T. H., in compliance with specifications 5407 and amendments thereto, all of which are attached to the petition herein as Exhibit A and are made a part hereof by reference. Thereafter on December 27, 1927, in compliance with the statute relating to Government contracts (Hurd Act, U. S. Code, title 40, section 270), Blume, as principal, and the Globe Indemnity Company and The Fidelity and Deposit Company of Maryland, as sureties, gave bond for faithful performance by Blume in the undertaking and payment by him for labor and materials on the proposed construction work, all of which more fully appears from a copy of the bond attached *590 to the petition herein as Exhibit B and made a part hereof by reference. The bond was accepted and approved by the defendant.
Blume, the contractor, began work under his contract with the United States in February 1928. February 1,1929, long after the dates allowed and granted for completion of the work Blume abandoned further performance of the contract and thereafter refused and failed to carry on and complete the work required thereunder. Thereafter the contract work was carried on and completed by the Navy Department at great expense and cost to the United States by the purchase of the necessary building materials and the employment of its own construction engineers and technical staff, and hired mechanics and laborers. The record herein does not definitely show just when the work was completed by the United States, but for the purpose of this opinion it is found that it was completed by the Government on or shortly prior to May 21, 1930. The total contract price as modified, specified in the contract between Blume and the United States, was $445,815.41.
Prior to the abandonment of the contract by Blume, the Navy Department made payments to him from time to time as the work progressed, as provided by the contract, and on January 7,1929, the date of the last progress payment made to Blume, the aggregate of such progress payments was $314,666.16. The cost to the Government of completing the work upon Blume’s abandonment of the contract was $89,123.49. In addition Blume was charged with penalties for delay amounting to $12,715. The difference between the total contract price and the amount paid to Blume before his abandonment of the contract, plus the cost of completion and penalties for delay, was $29,310.76. Upon receipt from Blume of notice on February 1, 1929, of his abandonment of the contract and of the work required thereunder, the Navy Department made no further payments to him for materials, supplies, and labor performed since the date of the last progress payment and ceased making any further payment's after his refusal and failure to proceed with the work.
*591 It does not appeal’ wbat amount, if any, in excess of progress payments made was due Blume for work performed and materials furnished to the date of Ms abandonment of the contract. Art. I of Blume’s contract of December 7, 1927, obligated the contractor, among other things, to furnish all labor and materials and perform all work required for constructing and erecting the barracks, a subsistence building, a laundry and boiler house, and completing the construction of said buildings within a certain specified time. Blume did not furnish all labor and materials for this purpose and did not in fact complete the construction of the buildings but he abandoned the work on February 1, 1929, as hereinbefore stated.
October 29, 1929, Blume, the contractor, instituted suit in this court to recover damages from the United States, alleging breach by the Navy Department of the contract entered into between him and the Chief of the Bureau of Yards and Docks, December 7, 1927. December 7, 1929, the United States filed an answer to .this petition denying each and every allegation thereof. An amended petition was filed March 5, 1931, alleging damages of $282,472.02, to which the defendant filed a general denial.
In November 1930 the American Factors Co., Ltd., who had furnished certain materials to Blume for use in the construction work performed by him under his contract with the United States, instituted suit under the Hurd Act, U. S. Code, title 40, section 270, in the United States District Court of Hawaii against Blume as principal and plaintiffs as sureties on Blume’s bond to recover the sales price of such materials so furnished to Blume for which he had not made payment. Soon thereafter other creditors of Blume intervened in that suit and were made parties thereto, as provided by the Hurd Act. As a result of these suits plaintiffs, as sureties for Blume, paid $58,834.48 in October 1931 and $18,804.27 in September 1932, totaling $77,738.75, in settlement of the claims for labor and materials furnished to Blume for use in connection with his contract with the United States.
After issue was joined and the suit instituted in this court by Blume both he and the defendant called and *592 examined numerous witnesses and introduced into the record a large amount of documentary evidence and proof on the issue of fraud raised and joined in the pleadings. Among other documents offered in evidence by Blume in the proof or establishment of the claims growing out of the contract between him and the United States was a cash booh purporting to record cash disbursements made by him in connection with the work which he had performed under the contract of December 7, 1927. This cash book was duly received in evidence and made plaintiffs’ exhibit 239, part 3. While this cash book was in the custody of the court as an exhibit and as part of the proof in the case, Charles A. Blume, with, the object and for the purpose of misleading and deceiving the court, did between January 20 and February 29, 1932, corruptly alter, change, and falsify certain of the original entries in this cash book with intent to defraud the United States as to proof, statement, establishment, or allowance of the claims arising and growing out of the contract of December 7, 1927, between him and the United States.
April 11, 1932, immediately following the discovery of such changed and falsified entries, the United States filed a special answer and plea of fraud under section 172 of the Judicial Code, U. S. Code, title 28, section 279. A true copy of such special answer and plea of fraud is attached to the plea in bar herein and is made a part hereof by reference. Issue was joined upon the plea and proof was taken thereon by both parties.
During the hearings on the defendant’s plea of fraud, plaintiffs sought to intervene and to file an intervening petition for the purpose of setting up, as sureties on the performance bond of Blume, their asserted rights as subrogees to recover from the United States the amount here involved, notwithstanding any forfeiture of the claim or claims growing out of the contract of December 7, 1927, which thereafter might be declared, decided, and adjudicated by the court. The motion of plaintiffs to intervene was denied.
November 5, 1934, this court sustained the plea of fraud, 81 C. Cls. 210, and entered a judgment forfeiting the entire claim made in that suit to the United States, which claim *593 was based on and grew out of the contract of December 7, 1927. A true copy of the findings of fact, conclusion of law, judgment, and opinion of the court is attached to the plea in bar herein as Exhibit 3 and is made a part hereof by reference.
In view of the facts herein and the provisions of section 172 of the Judicial Code, we are of opinion that plaintiffs cannot recover. Their claim is based upon and grows out of the contract of December 7, 1927, between Blume and the United States, and is a part of the claim forfeited to the United States by the judgment of this court. Basically their right to recover rests upon the doctrine of subrogation to the rights of Blume.
Section 172 of the Judicial Code, U. S. Code, title 28, section 279, provides that when any person corruptly practices or attempts to practice a fraud against the United States in connection with any claim, or any part of a claim, against the United States, it shall be the duty of the court to find specifically that such fraud was practiced, or attempted to be practiced, “and thereupon give judgment that such claim is forfeited to the Government” and that the claimant be forever barred from prosecuting the same. The language of this section is very broad and we construe it to apply to the whole of any claim arising out of any contract or cause of action in connection with which any person before the court as a claimant therein corruptly practices or attempts to practice a fraud against the United States in the proof, statement, establishment, or allowance of a claim or any part thereof and not merely to the forfeiture to the Government of the interest of the particular [claimant who practices the fraud or to his right further to prosecute the same. In other words, the statute not only forfeits the entire claim growing out of the transactions upon which it is founded and bars the claimant and those who may claim under him, but it destroys the right of action of the principal claimant and every person claiming by right of subrogation directly based upon the transaction or transactions out of which the claim arose— in the case at bar, the contract of December 7, 1927. The section was designed to afford the Government an effective *594 means of defeating and forever ending actions based on fraudulent claims. This section, in effect, withdraws the consent of the United States to be sued upon any contract or transactions in connection with which any claimant has practiced or attempted to practice fraud.
The provision forfeiting any claim in connection with which fraud is practiced was enacted in 1863. It becomes a part of every contract with the United States. Sureties, as well as contractors, are charged with notice of possible foiy> feiture to the United States of the whole of any claim in connection with which fraud is practiced and of the forfeiture, as well, of any cause of action based upon the contract of the person committing the fraud. The main purpose of the statute is to penalize not only the contractor for what amounts to a crime against the United States but every one holding under him or succeeding to his rights, .or basing any claim against the United States upon the transactions involved in the claim or upon the contract in connection with which the fraud was committed.
In the case of Blume v. United States, supra, in discussing the motion of these plaintiffs to intervene, the court said:
* * * Under the statute the charge of fraud went to the whole of plaintiff’s claim, and plaintiff’s sureties on his bond to the United States had no greater right than plaintiff with respect to any claim arising under the contract. Under the court’s finding that the acts of the plaintiff in this suit brought about a forfeiture of the entire claim, there is left in the case no subject matter with respect to which the sureties may intervene.
Although the court was there discussing the right of plaintiffs to intervene before the judgment of forfeiture was entered, we think what was said applies with equal force to the right of plaintiffs to maintain a separate suit based upon Blume’s contract with the United States. Plaintiffs contend that they have a legal right to maintain this action and to recover from the United States amounts paid in settlement of suits against Blume for materials and labor furnished him during his performance of the contract with the United States under the doctrine of subrogation or substitution, not to the rights of Blume the principal but *595 to the rights of the United States to any funds that might have been due Blume by the United States under the contract between him and the United States, except for the fraud committed by Blume; that the rights of plaintiffs are contractual and the realization of them depends upon the doctrine of subrogation by law as the equitable owner of any funds in the hands of the United States which the United States might have used to complete the contract upon Blume’s default; that Blume may have assigned or forfeited his right against the United States but the assignment or forfeiture of rights reached only his interest or right to prosecute the claim against the United States and cannot affect the established rights of the sureties.
Sureties on a Government contract are in contractual relationship with the United States only through the contract of their principal and while in a proper case they may be subrogated to the rights of the United States to any funds or securities in its hands due the contractor under the contract, or which it might use for any legitimate purpose under the contract, such as the payment of claims for materials or labor, or for completion of the contract upon default of the principal, such right of the surety to lay claim against the Government to such fund or securities arises only by reason of their subrogation initially to the rights of the principal, the contractor, with the United States. In other words, plaintiffs’ right to recover any amount from the United States is and must be based upon Blume’s contract. The party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is substituted. The doctrine of subrogation was never intended to be used as an instrument to circumvent the principles of equity and by circuitous action to permit the assignee to be placed in a more advantageous position than the assignor from whom his rights devolved. The fraud committed by Blume was not personal, affecting him alone in the forfeiture. As in equity generally the fraud vitiated and nullified all rights of Blume and those who succeeded to any right that he may have had but for the fraud, and those who claim under and *596 through him or his contract. Any other conclusion would open the door for collusion and more fraud and, by indirection, defeat the general object of the statute.
If it be assumed that prior to the fraudulent acts of Blame the United States might have been liable for an amount in excess of that specified in the contract, by reason of the extra work and changes, and that the Government, upon the abandonment of the contract by Blume, completed the work at a cost which was less than the contract price, any fund arising from such sources is not a trust fund and the United States does not here stand in the position of a stakeholder of an amount admittedly due. On the contrary, any fund which, but for the forfeiture, might be considered as a trust fund against which the sureties might claim was completely forfeited to the United States and any cause of action with respect thereto was wiped out by law and the judgment of this court. Inasmuch as the subject matter and the remedy have been destroyed by operation of law, there is nothing left on which the doctrine of subrogation, either to the rights of the principal contractor or the right of the Government, may operate, or upon which plaintiffs can maintain a suit on any theory of an implied contract on the part of the Government to pay.
The demurrer is overruled and the plea in bar is sustained. The petition is, therefore, dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Gkeen, Judge, and Booth, 0hief Justice, concur.