**ARLINGTON TRUST CO., Inc. et al. v.
UNITED STATES.**

No. 49687.

United States Court of Claims.

Decided Nov. 6, 1951.

William A. Kehoe, Jr., Washington, D. C., (Kane & Koons, Washington, D. C., on the brief), for the plaintiff.

Edward L. Metzler, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge, delivered the opinion of the court.

The Government has moved, pursuant to Rule 51 of this court, 28 U.S.C., for a summary judgment dismissing the plaintiff's petition and adjudging the plaintiff's claim forfeited for fraud, pursuant to the provisions of Title 28 U.S.Code, § 2514.

The plaintiff acquired its interest in the claim covered by the petition by assignment from Leyde and Leyde, a partnership which had a number of contracts with the Government. An assignment to a bank or trust company of a contractor's right to receive money from the Government pursuant to a contract is authorized by the Assignment of Claims Act of October 9, 1940, 54 Stat. 1029, 31 U.S.C.A. § 203.

Leyde and Leyde made four contracts with the Government's agency, the United States Maritime Commission, the first on April 19, 1945, and the others shortly thereafter, for the manufacture by Leyde and Leyde of 391 life rafts for a total price of $487,125.00. By the terms of the contracts, and of the Contract Settlement Act of 1944, 58 Stat. 649, 670, 41 U.S.C.A. § 101ff, the Government had the right to terminate the performance of the contracts, on notice, and the contractor had the right to be paid the costs which it had incurred up to the time of the termination. The Government did terminate the four contracts about August 20, 1945. For the contractor to recover the costs to which it was entitled, it was required by the contract and by the applicable statute and regulations, to file claims or statements detailing its costs. Forms for such statements were furnished by the Maritime Commission to Leyde and Leyde and it filed a claim with the Mari-

time Commission, stamped October 29, 1945, covering its asserted costs under the contracts included in this suit. On the face of this claim, Item 14, "Settlements with subcontractors (from Sch. F)" lists $41,334.63. Schedule F of the claim shows Potomac Enterprises as a subcontractor, and $11,930.17 as the "Amount of settlement" by Leyde and Leyde with that subcontractor.

After an investigation, and other events not here relevant, the Government instituted Civil Action No. 4002 in the United States District Court for the District of Maryland against the partnership of Leyde and Leyde, and each of the partners. The suit was brought under Section 19 of the Contract Settlement Act of 1944, supra to recover damages and penalties for alleged fraudulent claims submitted to the Maritime Commission in connection with the termination of contracts, including those herein suit. Leyde and Leyde had also filed two other termination claims, in addition to the one referred to above, one of them on behalf of its asserted subcontractor, Potomac Enterprises, and asserting claims under two of the contracts involved in this suit, that claim duplicating, or overlapping, the item of $11,930.17 contained in Leyde and Leyde's own claim addressed to all four of the contracts. In the Government's civil suit alleging fraud it, in its complaint, addressed itself to the claim filed by Leyde and Leyde on behalf of Potomac Enterprises, so far as fraud in the Potomac Enterprises items was concerned, though it also alleged fraud in regard to certain items of Leyde and Leyde's own claim in relation to all the contracts here in suit.

Judge Chesnut, after an extended trial, found that Potomac Enterprises was a fiction fraudulently created by Leyde and Leyde for the purpose of padding its termination claim, and that that claim was false and fraudulent in the amount of $15,155.64. He rendered the appropriate judgment for the Government, and wrote a careful opinion explaining the findings and decision. See United States v. Leyde & Leyde et al., D.C., 89 F.Supp. 256. The $15,155.64 which Judge Chesnut held to be fraudulent included the $11,930.17 which appeared, as shown above, in Leyde and Leyde's own termination claim applicable to all the contracts in suit.

The Government says that the decision of the District Court is *res adjudicata* as to the question of whether there was fraud in the presentation of the claim here sued on. The plaintiff would apparently concede that the $15,155.64 found to have been fraudulently claimed has been forfeited, and that if it were sued on here we would have to so adjudge it. But, the plaintiff says, the claim which was held to be fraudulent was the one which Leyde and Leyde filed on behalf of Potomac Enterprises; that that was a separate claim; and that its fraudulent character would not prevent Leyde and Leyde from enforcing its other claim on the contracts here in suit. The plaintiff cites this court's decision in Branch Banking & Trust Co. v. United States, 115 Ct.Cl. 341, 87 F.Supp. 777, where it was held that fraud in the performance of one part of a contract would not forfeit the right to recover money justly due on other portions of the contract.

■■ Here, however, Leyde and Leyde not only filed the separate fraudulent claim which was the direct subject of the District Court's condemnation, but included most of the same fraudulent items in its own claim, the very claim here in suit. When one presents a claim against the Government, some items of which are fraudulent and some not, the claim, as a claim, is forfeited, as to the person who presents it. Furay v. United States, 34 Ct.Cl. 171. See Jerman v. United States, 96 Ct.Cl. 540, 552. The mere fact that Leyde and Leyde filed two fraudulent claims with regard to the Potomac Enterprises transaction, and that the Government and the court in the civil suit for fraud gave their attention to the one rather than mentioning both, is not a substantial reason for us to close our eyes to the same fraud written into the claim here in suit.

■ If, then, this suit were by Leyde and Leyde we would sustain the Government's motion for summary judgment, based on the decision of the District Court. But the plaintiff here is a Trust Company, which,

we suppose, loaned money to Leyde and Leyde to finance the performance of the contracts in suit. It had no part in the fraud. The Government claims that the plaintiff stands in the shoes of Leyde and Leyde, its assignor, that the claim, as such, is forfeited, and that no one can recover on it. Section 2514 of Title 28 U.S.Code, says:

*"Forfeiture of fraudulent claims*

"A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

"In such cases the Court of Claims shall specifically find such fraud or attempt and render judgment of forfeiture."

The statute speaks of forfeiture *by any person* who practices fraud. In the *Jerman* case, *supra*, we held that a receiver for a contractor was barred by the contractor's fraud, because, we said, he was not a purchaser for value or a purchaser at all. The plaintiff is, presumably a purchaser in the sense that it loaned money to Leyde and Leyde when it took its assignments of the contracts. When we look at the purpose of the 1940 amendment to the Assignment of Claims Act, 31 U.S.C.A. § 203, which was to enable contractors with the Government to obtain from private sources funds to finance their performance, we think it could not have been intended by Congress that the bank which loaned the money should take the risk that its collateral might, in an instant, be rendered worthless by the act of the contractor in committing fraud in the presentation of proof of his claim under the contract. We remember that the forfeiture statute has the effect, when it operates, of giving the Government something for nothing, so far as the nonfraudulent portion of a contractor's claim is concerned. The contest, then, being between the trust company which only seeks to get its money back, with interest, and the Government, which seeks to get such meritorious performance as there may have been, for nothing, equity is with the trust company, and we so interpret the statute. Of course the plaintiff will have to prove, at the

trial, the extent of its interest in the contract, and the amount to which Leyde and Leyde would have been entitled, but for the fraud.

The Government cites the decisions of this court in the cases of Blume v. United States, 81 Ct.Cl. 210 and Globe Indemnity Co., et al. v. United States, 84 Ct.Cl. 587, holding that a surety for a contractor with the United States could not, by subrogation, recover on the claim of a contractor who presented fraudulent proof of his claim. The court, in those cases, used broad language to the effect that everyone holding under the fraudulent contractor is barred by his fraud. *It is not necessary in this case to decide whether that language, which is broader than was necessary for the actual decision of those cases, was too broad.* The Assignment of Claims Act of 1940, *supra*, has, we think, modified any such general doctrine for the benefit of those finance companies which were invited and encouraged by that act to lend money to contractors with the Government.

The Government also cites our decision in Modern Industrial Bank v. United States, 101 Ct.Cl. 808, 819, holding that an assignee under the Assignment of Claims Act of 1940, *supra*, took subject to the Government's right, reserved in the contract, to set off its cost of getting the work completed, when the contractor failed to complete, against moneys which would otherwise have been payable to the contractor. There the Government was only seeking to recoup its actual expenditures, and not, as in the instant case, to obtain a windfall by forfeiting the meritorious portions of a contractor's claim. The equities, therefore, were quite different. Besides, the assignment statute, by its mention of set-offs which can be barred by express agreement, recognizes that other set-offs are available to the Government against the assignee.

We recognize that, under our decision, not only will the innocent plaintiff benefit, but Leyde and Leyde will also benefit to the extent that its debt to the plaintiff is paid out of any recovery that may be had in this case. As to whether, in this case or elsewhere, the Government might be entitled to step into the plaintiff's shoes for the

purpose of recovering from Leyde and Leyde, we express no opinion.

The defendant's motion for summary judgment is denied. It is not necessary to decide the question presented by the plaintiff's motion.

JONES, Chief Judge, and HOWELL, WHITAKER, and LITTLETON, JJ., concur.