**In re GULF APPAREL CORP., Debtor.**

**UNITED STATES of America, Appellant,**

v.

**The PEOPLES BANK AND TRUST COMPANY and Gulf Apparel Corp., Appellees.**

**Civ. A. No. 91–191–4–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

June 1, 1992.

Edgar W. Ennis, Jr., Bernard Snell, Macon, Ga., for U.S.

Edward Scott Sell, Jr., Macon, Ga., for Gulf Apparel Corp.

Harry W. Gamble, Jr., Selma, Ala., for The Peoples Bank and Trust Co.

OWENS, Chief Judge:

Before the court is an appeal by the United States of two orders issued by the United States Bankruptcy Court for the Middle District of Georgia. Appellant presents the following issues for review on appeal: (1) whether the bankruptcy court had subject matter jurisdiction over this turnover proceeding; (2) whether the bankruptcy court should have abstained and deferred this matter to another court; (3) whether appellee Peoples Bank is protected from appellant's fraud defense under the Assignment of Claims Act; and (4) whether interest may be awarded against the United States under the circumstances of this case. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court makes the following conclusions of law.

## FACTS

On November 19, 1980, Gulf Apparel ("Gulf") was awarded a procurement contract ("Contract") under which Gulf manufactured and sold uniforms to the United States Department of Defense. This Contract was one exclusively set aside for "small businesses" as defined by the Small Business Administration. The total Contract price was $4,650,000.00. The Contract contains a standard "no-setoff" provision in favor of an assignee of the Contract proceeds.

On April 8, 1981, the proceeds of the Contract were assigned to People's Bank and Trust Company ("Bank") as security for a financing arrangement between Gulf and the Bank. Under this arrangement, the Bank took assignment of the proceeds due or to become due under the Contract, and the Bank advanced money to Gulf on a revolving credit basis. The Bank gave notice of the assignment of the Contract to the government as required under the Assignment of Claims Act, and the assignment was accepted.

The Contract contains a Value Engineering Clause that allows the contractor to submit proposals for engineering changes and to share in any savings generated by the government's use of the proposals. Gulf submitted a Value Engineering Change Proposal ("VECP") to the government in the early 1980's, which was accepted in part. The parties disputed the amount of savings to which Gulf was entitled as a result of the government's use of the VECP, and the contracting officer entered a final decision under the Contract Disputes Act denying Gulf's claim for its share of savings generated by the VECP in May of 1982.

An involuntary Chapter 7 bankruptcy petition was filed against Gulf on November 7, 1986. This petition was converted to Chapter 11 on December 10, 1986. During the pendency of the bankruptcy petition, Gulf obtained court permission to appeal the contracting officer's denial of payment of its share of VECP savings to the Armed Services Board of Court Appeals ("ASBCA"). The ASBCA found that Gulf had submitted a valid VECP and that the VECP had been constructively accepted by the government on March 1, 1989. The government did not appeal the decision of the ASBCA.

Sometime prior to the ASBCA decision, the government discovered that Gulf had obtained the Contract through fraud. Gulf had falsely certified that it was a small business and had participated in bid-rigging and bribery during the bidding process.

In September, 1989, Gulf and the government signed a stipulation that the amount of savings generated by the three-year use of the VECP totalled $3,118,371.00 and that Gulf's share of this savings was $1,559,185.79. The stipulation also provides that any interest, if due, shall be paid as provided by the Contract Disputes Act. However, the stipulation also provides that it does not prejudice the government's fraud defense.

Gulf instituted this turnover petition in the Bankruptcy Court of the Middle District of Georgia to recover its share of the VECP savings on September 29, 1989. The Bank, as assignee of the Contract, intervened in the action, demanding judgment against the government and Gulf for any amounts due under the Contract up to the amount necessary to pay the Bank's secured claim. Gulf owes approximately $3,000,000.00 to the Bank.

The government asserted that the bankruptcy court had no subject matter jurisdiction over the turnover proceeding because the Contract proceeds were not part of Gulf's estate and therefore the turnover petition was not a core proceeding. The government also claimed that the bankruptcy court could not award prejudgment interest against the government pursuant to the Contract Disputes Act and that the bankruptcy court should abstain and defer jurisdiction to the United States Court of Claims or the ASBCA.

On May 11, 1990, the bankruptcy court found that the turnover petition was a core proceeding, that Gulf would be entitled to prejudgment interest if it prevails, and that judicial economy and the interests of justice would be best served if the bankruptcy court heard the turnover petition.

The Bank filed a motion for partial summary judgment, which was denied on the ground that the government had presented evidence that the Bank was aware of and participated in Gulf's fraudulent conduct in obtaining the Contract. The bankruptcy court held a trial on this issue on March 12, 1991, and on April 10, 1991, found that Gulf's fraudulent conduct was not imputed to the Bank. The court then ordered the government to turn over the amount of $1,559,185.79 to the Bank, with any interest due as determined by the Contract Disputes Act.

## DISCUSSION

The government has raised the following issues in this appeal:

(1) Whether the bankruptcy court had subject matter jurisdiction over this turnover proceeding;

(2) Whether the bankruptcy court should have abstained and deferred this matter to another court;

(3) Whether appellee Peoples Bank is protected from appellant's fraud defense under the Assignment of Claims Act; and

(4) Whether interest may be awarded against the United States under the circumstances of this case.

The court will address each issue in the following discussion.

## I. WHETHER THE BANKRUPTCY COURT HAD SUBJECT MATTER JURISDICTION OVER THE TURNOVER PROCEEDING.

### A. Whether the VECP Savings Are Property of the Estate.

The government contends that the bankruptcy court did not have jurisdiction to order a turnover of the proceeds because the proceeds were not property of the debtor's estate. 11 U.S.C. § 542. This claim is based upon the fact that the proceeds were assigned by Gulf to the Bank before Gulf filed its bankruptcy petition. The government argues that this assignment was an absolute assignment, and therefore, Gulf has no interest in the proceeds.

In *In re Contractors Equipment Supply Co.*, 861 F.2d 241 (9th Cir.1988), the Ninth Circuit held that where an assignment of accounts receivable is an assignment of a security interest rather than an absolute assignment, the accounts receivable remain property of the estate. Thus, the issue before the court is whether Gulf's assignment of proceeds under the Contract was an absolute assignment or assignment of a security interest.

The language of the assignment contract indicates that the proceeds were assigned as "collateral security" for all present and future obligations incurred by Gulf to the Bank. Consequently, the estate has a property interest in the proceeds, and the bankruptcy court had subject matter jurisdiction to order a turnover of the proceeds. *See In re Contractors Equipment Supply*, 861 F.2d at 245; *In re Evergreen Valley*

*Resort, Inc.,* 23 B.R. 659 (Bankr.D.Me. 1982); *In re Hurricane Elkhorn Coal Corp.,* 19 B.R. 609 (Bankr.W.D.Ky.1982).

### B. Whether the Turnover Proceeding Was a Core Proceeding.

■ The government also claims that the bankruptcy court had no authority to enter a final order in this case because it was not a core proceeding, as defined in 28 U.S.C. § 157(b)(1). A bankruptcy court can hear a non-core proceeding, but can only submit proposed findings of fact and conclusions of law to the district court. Only the district court is authorized to enter a final order in the case.

■ A core proceeding is defined in § 157(b)(2)(E) to include "orders to turn over property of the estate" and "other proceedings affecting the liquidation of the assets of the estate." This court has already found that the VECP savings are property of Gulf's estate, and the bankruptcy court is merely exercising its power to order the government to turn the VECP savings over to Gulf's assignee, the Bank. The Bankruptcy Code provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b).

The ASBCA has determined that the government is liable to Gulf for the VECP savings, and the parties themselves have agreed on the amount owed; thus, the debt is matured. Gulf and the Bank, in this action, are merely attempting to collect the debt. *See Acolyte Electric Corp. v. New York,* 69 B.R. 155, 172 (Bankr.E.D.N.Y. 1986) ("A turnover proceeding can only be considered a core proceeding under § 542(b) when its purpose is the collection rather than the creation, recognition, or liquidation of a matured debt.")

The government argues that this case concerns the Bank's entitlement to the VECP savings rather than collection of them and relies upon the *Acolyte* case to support this contention. In *Acolyte,* the court found that a debtor's action for damages from breach of contract was a non-

core proceeding. *Id.* at 172. However, in *Acolyte,* the "debt" was not matured, and the breach of contract was based purely on state law. *Id.*

In the case at bar, liability has already been determined by the ASBCA. The government is merely trying to assert a defense to avoid paying the matured debt. Furthermore, this case, unlike *Acolyte,* is based upon *federal* law—the Assignment of Claims Act and the Contract Disputes Act. This is not "a bona fide dispute [that] exists as to liability involving state law." *Id.*

In addition, there is no doubt that the result of this litigation will affect the liquidation of the assets of Gulf's estate. If the Bank cannot collect the VECP savings from the government, no portion of Gulf's $3 million debt to the Bank will be paid. Hence, this action is a core proceeding as defined in 28 U.S.C. § 157, and the bankruptcy court had authority to enter a final order in the case.

The government also challenges the bankruptcy court's jurisdiction on the ground that there has been no waiver of sovereign immunity. This argument has no merit. Accordingly, the bankruptcy court had subject matter jurisdiction over this core proceeding.

### II. WHETHER THE BANKRUPTCY COURT SHOULD HAVE ABSTAINED AND DEFERRED THIS MATTER TO THE UNITED STATES CLAIMS COURT OR THE ASBCA.

■ The government also contends that the bankruptcy court should have abstained from hearing this case and deferred it to the United States Court of Claims or the ASBCA because of the "special expertise" required to decide this case.

However, the court fails to see any reason why the bankruptcy court is not capable of deciding this case. The complex issues concerning the government's liability for the savings generated by the VECP clause *were* decided by the ASBCA. Moreover, the parties have stipulated to the amount due to Gulf. At present, this case

is simply a determination of the validity of an assignment and the defenses available against the assignee. The bankruptcy court "frequently is called upon to determine the validity of contracts and is capable of resolving the issue presented." *United States v. Peoples Bank and Trust Co.* (*In re Gulf Apparel*), 89–5705–MAC, at 8 (Bankr.M.D.Ga. May 11, 1990).

Furthermore, as stated by the bankruptcy court:

> The Court notes that Gulf Apparel's bankruptcy case is three-and-one-half years old. If this Court abstains, further delay will result. This Court is ready and able to hear Gulf Apparel's complaint as soon as counsel are prepared to proceed. The Court notes that justice delayed may well be justice denied.... The Court is persuaded that judicial economy and the interests of justice will best be served by this Court hearing the complaint.

*Id.* at 8.

Hence, there was no error in the bankruptcy court's refusal to abstain and defer the case to another court.

## III. WHETHER THE GOVERNMENT CAN ASSERT GULF'S FRAUD IN THE INDUCEMENT AGAINST THE BANK, AN INNOCENT ASSIGNEE.

The government seeks to defend against the Bank's turnover petition by asserting a defense of fraud in the inducement against the Bank. Fraud in the inducement is fraud "which does not go to the essence of the agreement but merely induces the party to enter the agreement." *Federal Savings & Loan Ins. Corp. v. Gordy*, 928 F.2d 1558, 1563 (11th Cir.1991). In contrast, fraud in the factum is described as fraud " 'that procures a party's signature to an instrument without knowledge of its true nature or contents,' " fraud that occurs " 'within the instrument itself,' " and fraud that arises " 'when a party signs a document without full knowledge of the character or essential terms of the instrument.' " *Id.* at 1565 (citations omitted).

The government claims that Gulf falsely certified that it was a small business, engaged in bid-rigging with its competitors, and bribed a government official in order to obtain the Contract. These alleged fraudulent acts have no effect on the terms of the Contract; therefore, this fraud is fraud in the inducement.

The bankruptcy court previously found that the Bank had no knowledge of Gulf's alleged fraud in obtaining the contract, and this finding is not clearly erroneous. Therefore, the issue before the court is whether the government can assert the defense of Gulf's alleged fraud in the inducement against an innocent assignee.

The government contends that Gulf's fraud in the inducement rendered the Contract void *ab initio;* therefore, the Bank received a worthless assignment from Gulf and has no claim. The government relies upon *J.E.T.S., Inc. v. United States*, 838 F.2d 1196 (Fed.Cir.1988), *cert den.*, 486 U.S. 1057, 108 S.Ct. 2825, 100 L.Ed.2d 926 (1988), to support this contention.

*J.E.T.S.* involved a government contract for food service management that contained an option to extend the contract for another year at the same price. The government exercised the option twice, and after the contract was fully performed and paid at the original contract price, the contractor sought an equitable adjustment of the price. During the litigation of this claim, the contractor was indicted for and convicted of falsely certifying that it was a small business when it obtained the contract.

The Federal Circuit held that the contractor was not entitled to a price adjustment because of its fraud:

> The contract ... was procured by and therefore permeated with fraud.... [The contractor] obtained this contract by knowingly falsely stating that it was a small business. Had it stated the truth about its size, it would not have received the contract. A government contract thus tainted from its inception by fraud is void *ab initio* .... "[T]o permit recovery of any further monies under the circumstances would be an affront to the

integrity of the federal procurement process."

*Id.* at 1200 (citing *United States v. Mississippi Valley Generating Co.,* 364 U.S. 520, 564–65, 81 S.Ct. 294, 316–17, 5 L.Ed.2d 268 (1961)).

While the Federal Circuit in *J.E.T.S.* states that the contract was rendered void *ab initio* by the contractor's fraudulent inducement of the contract, there are significant distinctions between *J.E.T.S.* and the case at bar. First, in *J.E.T.S.*, the party *who actually committed the fraud* was the party who brought the claim. In the case at bar, the Bank, an innocent assignee, is seeking to recover the VECP savings. Second, the contractor in *J.E.T.S.* was seeking compensation in addition to that which was owed under the terms of the contract. In the case at bar, the Bank is seeking to recover that which is owed expressly under the terms of the Contract. Therefore, one cannot compare *J.E.T.S.* to the situation in the case at bar.

The assignment in question is governed by the Assignment of Claims Act, 41 U.S.C. § 15, 31 U.S.C. § 3727. This Act contains a general prohibition against assignments of claims against the United States, but this prohibition does not apply to assignments of government contract proceeds made to financial institutions like the Bank.

In addition, the act provides special protections to these financial institutions. First, once the assignee has collected any contract payments from the government, the government cannot recover any of these payments based upon "liability of any nature of the assignor to the United States ... whether arising from or independently of such contract...." 41 U.S.C. § 15. Second, when the contract contains a no set-off provision as this Contract does, "payments to be made ... to an assignee of any moneys due or to become due under such contract ... shall not be subject to reduction or set-off for any liability of any nature of the assignor to the United States ... which arises independently of such contract...." Thus, the government cannot recover an amount already paid to an assignee when the assignor is liable for *any*

reason, and the government cannot reduce the amount to be paid to the assignee when the assignor is liable for reasons that are *independent of the contract.*

In this case, the government attempts to circumvent the no set-off provision by claiming that the Contract is void *ab initio* due to Gulf's fraud in obtaining the contract. However, only fraud in the factum renders a contract void; fraud in the inducement renders a contract voidable rather than void. *See* 17 Am.Jur.2d *Contracts* § 151 at 502; *Federal Savings & Loan Ins. Corp. v. Gordy,* 928 F.2d 1558, 1563 (11th Cir.1991) (citing *Langley v. FDIC,* 484 U.S. 86, 93–94, 108 S.Ct. 396, 398–99, 98 L.Ed.2d 340 (1987)).

Even if the fraud in this case renders the contract voidable rather than void, the government contends that the Bank cannot recover under the Contract because the fraud is not independent of the Contract. However, fraud in the inducement, by its nature, is outside of the contract. It has nothing to do with the contents or the "essence" of the contract. *Gordy,* 928 F.2d at 1565. Thus, Gulf's fraud in the inducement is independent of the Contract, and the government is prohibited from reducing any amount owed to the Bank on the Contract to compensate for Gulf's alleged fraud.

This issue was previously addressed by the Bankruptcy Court of the Southern District of Alabama in *Burton v. United States (In re Selma Apparel),* 88–182 (Bankr.S.D.Ala. August 14, 1989). *Burton* involved the same facts as the case at bar, and the court found that the government's fraud in the inducement defense was not available against an innocent assignee. In *Burton,* the court found that while an assignee of an ordinary contractual right is subject to the same defenses as the assignor, an assignee under the Assignment of Claims Act is not an ordinary assignee.

The court found that an Assignment of Claims Act assignee is "accorded the status of a bona fide purchaser for value by the language and policy of the assignment of Claims Act. It is subject to nonpayment for nonperformance by its assignor within

the four corners of the contract, for the assignor's conduct 'in execution [or] breach of the contract'; otherwise it is not chargeable with the misfeasance, malfeasance, or nonfeasance of its assignor." *Id.* at 10 (citations omitted).

The court finally notes that the equities in this case support the Bank's position. The Contract and the assignment took place in the early 1980's. The Bank provided financing to Gulf in reliance on the assignment. The Contract was fully performed, and the government had no complaints about Gulf's performance. Moreover, the government incurred a substantial amount of savings ($3 million) due to Gulf's VECP. Then, after all of this occurred, the government discovered that Gulf had originally obtained the Contract through fraud, and now the government seeks to use this fraud to avoid paying the Bank, an innocent party, its share of the savings. To allow the government to gain such a benefit and the Bank to suffer such a loss would be inequitable.

In addition, such a result would thwart the purpose of the Assignment of Claims Act, which is "to enable contractors with the government to obtain from private sources funds to finance their performance." *Arlington Trust Co. v. United States,* 121 Ct.Cl. 32, 100 F.Supp. 817, 819 (1951). As the Bankruptcy Court of the Southern District of Alabama stated in *Burton,*

> To argue, as the government does, that a lending institution presented with what appears on its face to be a duly awarded government small business contract acts at its absolute peril in accepting assignment and financing of such is to argue that no prudent lending institution should ever finance a small business contract. The policy of the Assignment of Claims Act and of the small business set-aside program requires that financing entities acting in good faith be protected from, rather than punished for, contractor misconduct.

*Id.* at 11.

Accordingly, the government's fraud in the inducement defense cannot be asserted against the Bank.

## IV. WHETHER THE BANKRUPTCY COURT ERRED IN AWARDING INTEREST.

■ The government finally contends that the bankruptcy court had no jurisdiction to award interest pursuant to the Contract Disputes Act ("CDA"). Under the CDA:

> Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof.

The government claims that interest may only be awarded during a CDA proceeding. It relies upon *Sigmon Fuel Co. v. Tennessee Valley Authority,* 754 F.2d 162 (6th Cir.1985) to support this position.

In *Sigmon,* a government contract assignee sought to recover contract proceeds in district court. The Sixth Circuit held that the assignee was not entitled to prejudgment interest because the assignee had elected not to proceed under the CDA. Because the assignee had, instead, proceeded with a direct action in district court, it was not entitled to any relief under the CDA.

*Sigmon* does not affect an award of prejudgment interest in this case. In contrast to *Sigmon,* Gulf sought to collect the VECP savings first from the contracting officer. Then, as required under the CDA, Gulf appealed the contracting officer's decision to the ASBCA. The ASBCA held that Gulf was entitled to the VECP savings. Thus, Gulf did elect to proceed under the CDA, and Gulf's assignee is therefore, entitled to prejudgment interest. The bankruptcy court did not err in awarding interest.

## CONCLUSION

The court finds that the bankruptcy court had subject matter jurisdiction over this case and that it was a core proceeding. Furthermore, the bankruptcy court did not err in refusing to abstain and defer to the jurisdiction of the Court of Claims or the ASBCA. The bankruptcy court also did

not err in refusing to allow the government to assert a fraud in the inducement defense against the Bank. Finally, the bankruptcy court did not err in awarding prejudgment interest. Accordingly, the May 11, 1990, and April 10, 1991, orders of the bankruptcy court are AFFIRMED.

SO ORDERED.